# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| TERRY LEWIS BENFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:10CV90 AGF |
| ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Terry Benford (registration no. 187948), an inmate at Northeast Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that the Plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $14.83. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.[1]

---

[1] The Court's review of the complaint includes review of the amended supplemental complaint plaintiff submitted on January 13, 2011.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of Plaintiff's account indicates an average monthly deposit of $72.67, and an average monthly balance of $74.16. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $14.83, which is 20 percent of Plaintiff's average monthly balance.

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a Defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989); Denton v. Hernandez, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named Defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd, 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**The Complaint**

Plaintiff brings this action under 42 U.S.C. § 1983. The incidents alleged in the complaint occurred while Plaintiff was serving a six-month sentence at Dunklin County Justice Center ("DCJC"). Named as Defendants are Correctional Medical Services ("CMS"), Rod Harvegrove (Jail Administrator, DCJC), Bob Holder (Sheriff, DCJC), Billy Hopper (Sergeant, DCJC), Willie Moore (Correctional Officer, DCJC), and Unknown Rakestaw (Doctor, Correctional Medical Services). Defendants are sued in

their individual and official capacities. Plaintiff seeks injunctive, declaratory, and monetary relief.

Plaintiff alleges that on January 14, 2010, he was attacked by another inmate and suffered injuries to his head, left shoulder, and left knee. Plaintiff says he had previously warned Defendant Hopper of the other offender's violent behavior.

Plaintiff was taken to the hospital by ambulance. The hospital physician performed a CT scan of Plaintiff's head and X-rays on Plaintiff's shoulder and knee. Plaintiff claims that the doctor found "intracranial pathology" and no acute fractures or bony injuries. Plaintiff's left knee and left shoulder showed signs of swelling.

When Plaintiff returned to DCJC, he was placed in medical and given a wheelchair. Plaintiff says that Defendant Hopper approached him, called him a "no-good Black m - - - f - - -," and placed him in the drunk tank as punishment for the incident with the other inmate. Plaintiff says he asked Defendant Hopper if he could have a disciplinary hearing or to talk to his attorney but that Hopper refused on both counts. Plaintiff alleges that Hopper told him that DCJC does not have disciplinary hearings and that Hopper had the authority to punish him.

Plaintiff claims that he asked Defendant Harvegrove for a grievance but that Harvegrove refused, telling Plaintiff that he stood by whatever Hopper decided to do.

Plaintiff states that he stayed in the drunk tank, which is a cell with only a toilet and a sink, for five days. Plaintiff says that his medical condition became "much worse" while he was in the drunk tank.

Plaintiff alleges that on January 15, 2010, he sent in a sick-call request to be seen by the doctor. Plaintiff claims that Hopper tore up the request, telling Plaintiff he was malingering.

Plaintiff says that after filing several more sick-call requests, he was seen by Defendant Rakestaw, who diagnosed Plaintiff with having a slight concussion and a torn ligament in his knee. Plaintiff states that Rakestaw did not examine his shoulder, even though he told Rakestaw that it was painful and that he had limited use of it. Rakestaw, says Plaintiff, prescribed him Tylenol and an MRI, for his left knee.

Plaintiff alleges that Defendant Harvegrove told Rakestaw that he would not allow Plaintiff to get an MRI because it would cost too much money. Plaintiff says that Harvegrove then refused all of his requests to see a doctor. Plaintiff maintains that he was unable to walk or use his left arm at this time. Plaintiff claims that Harvegrove told Plaintiff to stop requesting medical treatment.

Plaintiff says that in early February Harvegrove told him that he would be released upon his own recognizance for about thirty days so that he could seek medical care on his own. Plaintiff was seen by a physician, Dr. Fred Thornton, at Missouri

Delta Physician Services on February 8 and 19, 2010. Dr. Thornton concluded that Plaintiff probably had a torn cruciate ligament in his left knee and either bicipital tendonitis or a torn rotator cuff in his left shoulder. Dr. Thornton ordered an MRI for Plaintiff's knee, but Plaintiff was unable to obtain the MRI because he did not have medical insurance.

Upon his arrival at DCJC, Plaintiff was given a wheelchair by medical staff. When Defendant Hopper saw Plaintiff in the wheelchair, says Plaintiff, he ordered Defendant Moore to take the wheelchair away. Plaintiff says that Defendant Harvegrove further ordered Moore to "dump" Plaintiff out of the wheelchair. Plaintiff alleges that Defendants Hopper and Moore then dumped him out of the wheelchair onto the concrete floor, causing Plaintiff to fall and worsen his injuries.

Plaintiff alleges that Defendant Moore then sprayed mace in his face. Plaintiff further alleges that Harvegrove then ordered Moore and Hopper to drag Plaintiff back to the drunk tank, which they did. Upon placing Plaintiff his cell, alleges Plaintiff, Moore slammed his left hand with the steel door, causing further injury.

On March 2, 2010, Plaintiff was taken to court for a hearing. During the hearing, Plaintiff says, he fell down because of his injuries. Plaintiff says that his public defender asked Defendants Harvegrove and Holder to release Plaintiff's medical files and conduct an investigation to determine whether Plaintiff was being mistreated.

Plaintiff claims that Harvegrove told Plaintiff's attorney that he would be placed in a twenty-four hour observation cell so that he could be given medical care. Plaintiff says that Holder agreed with Harvegrove's plan.

Plaintiff alleges that he was placed in the observation cell but that he was denied any medical care. Plaintiff maintains that Defendant Rakestaw told Defendants Harvegrove, Hopper, and Holder that Plaintiff's injuries were severe and could lead to permanent disability. Plaintiff claims that Harvegrove and Hopper still refused to allow Plaintiff to get any medical care and that Rakestaw refused to see Plaintiff without permission from DCJC staff.

Plaintiff requested access to legal materials to research issues for his pending criminal charges and for his medical claims but that Harvegrove and Hopper refused his requests. Plaintiff alleges that the lack of legal materials damaged his ability to defend against the felony charges.

Plaintiff claims Harvegrove told him that the only way he would get medical care was for Plaintiff to plead guilty on the pending felony charges so that the Missouri Department of Corrections would take care of him.

Plaintiff pled guilty on the charges on March 24, 2010. Plaintiff says he has been diagnosed with post-traumatic stress disorder, a torn ligament in his left knee, and "a great deal of arthritis" in his left shoulder. Plaintiff claims to be in constant pain.

Plaintiff says that he incurred medical bills as a result of defendants' refusal to send him to a proper care provider and, instead, temporarily releasing him so that he could seek care on his own. Plaintiff maintains that the DCJC was responsible for his medical care while he was detained there.

**Discussion**

Plaintiff's claims against Harvegrove, Holder, Hopper, Moore, and Rakestaw, in their individual capacities, survive review under 28 U.S.C. § 1915(e), except for those claims specifically discussed below.

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint fails to state a claim upon which relief can be granted as to Defendants in their official capacities.

To state a claim against Defendant CMS, Plaintiff must allege that there was a policy, custom, or official action that caused an actionable injury. Sanders v. Sears Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993). Plaintiff has not alleged that a policy or official action of CMS led to his alleged injuries. As a result, the complaint fails to state a claim against CMS.

Plaintiff's due process claims regarding his placement in the drunk tank are substantially similar to a prisoner challenging his placement in administrative segregation. An inmate who makes a due process challenge to his placement in administrative segregation must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Plaintiff's allegations do not indicate that he suffered the type of atypical and significant hardship that might conceivably give rise to a liberty interest. Id. at 485-86 (no atypical and significant hardship where inmate spent 30 days in solitary confinement): Hemphill v. Delo, 124 F.3d 208 (8th Cir. 1997) (unpublished) (same; 30 days in disciplinary segregation, and approximately 290 days in administrative segregation); Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996) (same; 10 days disciplinary detention and 100 days in maximum security cell). As a result, to the extent Plaintiff seeks to assert an independent due process challenge to his placement in the drunk tank, Plaintiff's due process claim fails to state a claim upon which relief can be granted.

An inmate seeking damages from prison officials for subjecting him to cruel and unusual punishment by failing to protect him from assault by another inmate must show something more than mere inadvertence or negligence. Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir. 1991) (quotations omitted). He must show the defendants were

deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates. Id. (citations and quotations omitted). To establish "reckless disregard" by prison officials, an inmate must show that he was faced with a "pervasive risk of harm" and that the prison officials failed to respond reasonably to that risk. Id. (citations omitted) Moreover, a "pervasive risk of harm" may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution. Id. (quotations omitted) It is enough that violence and sexual assaults occur with sufficient frequency that prisoners are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures. Id. (citations and quotations omitted). Plaintiff's allegations regarding being assaulted by another inmate, however, fall short of demonstrating a "pervasive risk of harm." As a result, these allegations fail to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $14.83 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if Plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to Defendants Rakestaw, Harvegrove, Holder, Hopper, and Moore.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants Rakestaw, Harvegrove, Holder, Hopper, and Moore shall reply to Plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to Defendant CMS because, as to CMS, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that plaintiff's motion to substitute defendant John Doe with Unknown Rakestaw [Doc. #7] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 6th day of June, 2011.

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE